IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 3:13-CR-110 |
| v. | ) | |
| | ) | (MATTICE / GUYTON) |
| TIMOTHY SANDERS, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§ 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Suppress Evidence [Doc. 22], specifically firearms, video footage, and the statements of employees obtained from a pawn shop. The Defendant contends that this evidence was gained in violation of his rights under the United States Constitution. The parties came before the Court for an evidentiary hearing on the motion on April 8, 2014. Assistant United States Attorney Brooklyn Sawyers appeared on behalf of the Government. Attorney Michael B. Menefee represented the Defendant, who was also present. After hearing the evidence and the parties' arguments, the Court concluded that the Defendant lacked standing to challenge the seizure of the firearms and other evidence derived from the seizure of the firearms.

### I. POSITIONS OF THE PARTIES

Defendant Sanders stands charged in a two-count Indictment [Doc. 1] with being a felon in

1

possession of firearms on March 16 and 18, 2013. These charges stem from the Defendant's alleged sale of firearms on two occasions to U.S. Money Shops pawn shop in Rockwood, Tennessee. Following these alleged sales, the pawn shop emailed a list of transactions to the Roane County Sheriffs Department as required by state law. A Roane County detective reviewed the list and recognized the Defendant as a convicted felon. The detective alerted an ATF Agent to the firearms transactions, and the ATF Agent seized the firearms from the pawn shop.

The Defendant argues [Doc. 22] that the warrantless seizure of the firearms at issue violates his constitutional rights because the detective failed to comply with state statutes regulating pawn shops. He contends that Tennessee Code Annotated § 45-6-213 permits a law enforcement officer to place a ninety-day written hold order on property in possession of a pawn broker, if the officer has probable cause to believe that the property is stolen. He asserts that in the instant case, the detective issued a hold order containing material misrepresentations of fact. Thus, he argues the firearms and all evidence derived therefrom, must be suppressed because this evidence was gained in bad faith.

The Government responds [26] that the Defendant lacks standing to challenge the seizure of property over which he had already relinquished his property rights and any expectation of privacy to a third party. Second, it contends that law enforcement complied with Tennessee law in seizing the firearms. Finally, the Government maintains that even if the hold was improperly issued, law enforcement would have inevitably discovered and seized the firearms because the pawn shop was required by state statute to report the purchase of the firearms to law enforcement and to hold the firearms for twenty days after their purchase.

2

## II. SUMMARY OF THE TESTIMONY

At the April 8 evidentiary hearing, the Government called a single witness, Special Alcohol Tobacco and Firearms (ATF) Agent Jason Dobbs. Agent Dobbs testified that he has served as an ATF agent for five and one-half years. He stated that his job requires him to work closely with local law enforcement. He said that in March of 2013, he was contacted by Roane County Sheriff's Detective Bryan Walker, who informed Agent Dobbs that records from a pawn shop showed that the Defendant sold firearms to the pawn shop. Detective Walker also told Agent Dobbs that he recognized the Defendant as a convicted felon. After confirming the Defendant's felony conviction on NCIC, Detective Walker contacted Agent Dobbs to see whether he wanted to pursue the case federally. Agent Dobbs identified computer printouts [Exhibits 3 and 4] of transactions from March 16 and 18 at U.S.Money Shops pawn shop that were sent to Detective Walker. The Defendant's name and a photograph of his Tennessee state identification card appear on both printouts with respect to firearms transactions he conducted on those dates.

Agent Dobbs stated that he went to the pawn shop on March 21, 2013, and seized the firearms sold by the Defendant. He also interviewed the manager and two clerks and collected the video footage of March 16 and 18, 2013, from the pawn shop's surveillance camera. Agent Dobbs said that the video footage showed the Defendant bring firearms into the pawn shop, fill out paperwork with the clerks Jessica and Dustin, and sell the firearms. He stated that he interviewed Jessica and Dustin, who both said that they recognized the Defendant because he had been to the pawn shop before. They said that when the Defendant sold them the firearms, they followed the standard sales procedure, which required that an ID be scanned into the computer. The Defendant's ID, a Tennessee state identification card bearing the Defendant's photograph, was already in their

3

computer. Agent Dobbs produced a photocopy of the Defendant's ID card [Exhibit 1] that had been signed by the two clerks.

Agent Dobbs identified a copy of two purchase receipts [Exhibit 2] for the firearms that he received from the pawn shop manager. Purchase receipt 8204 reveals that on March 16, 2013, Timothy Wayne Sanders sold a firearm to the pawn shop for $70 and that the employee conducting the sale was Jessica. Purchase receipt 8210 states that on March 18, 2013, Timothy Wayne Sanders sold a firearm to the pawn shop for $250 and that the employee conducting the sale was Dustin. Agent Dobbs said that when he interviewed Jessica, she stated that she had the Defendant sign this purchase receipt. Dustin also told him that he had the Defendant sign the purchase receipt. Agent Dobbs stated that both clerks provided this same information in subsequent interviews in December 2013 and January 2014.

Agent Dobbs testified that he watched the surveillance video footage of the March 16 transaction with Jessica. He stated that Jessica identified herself and the Defendant on the video. Jessica also identified the Defendant in the video footage from March 18.

On cross-examination, Agent Dobbs testified that he did not meet the Defendant until after he had reviewed the video footage from the pawn shop surveillance camera. He stated that the individual on the video footage looked like the person in the photograph on the Defendant's identification card. He also stated that the pawn shop clerks signed the copy of the Defendant's identification card, stating that was the person who sold them the firearms. The clerks described the transactions with the Defendant to him. He did not recall if he asked them if that was the Defendant's signature on the purchase receipts.

Agent Dobbs acknowledged that the two emailed transaction lists state that Sanders was

4

"loaned" $70 and $250 respectively, in exchange for the guns. He stated that the purchase receipts show that the guns were sold, not pawned, to the pawn shop. Agent Dobbs testified that pawning an item involved a different procedure than selling the item. He testified that he was not a handwriting expert but that he believed the signatures on the two purchase receipts were similar. He acknowledged that he did not see the Defendant sign either purchase receipt. He said that Detective Walker's computer had "crashed" causing Walker to lose the email to which the transaction lists were attached. Agent Dobbs said that Detective Walker told him that the email contained no statements or comments, only the attached transaction lists.

On redirect examination, Agent Dobbs testified that he reviewed the procedure used in each firearms transaction and verified that it was the Defendant who engaged in the transaction. He stated that the clerks said they had the Defendant sign the purchase receipts. He also stated that the video footage corroborates what the clerks told him about the firearms transactions. On recross-examination, Agent Dobbs stated he did not know if the video footage of the transactions showed money exchanging hands. Nevertheless, he stated that the firearms were exchanged for money, not property.

The Government briefly recalled Agent Dobbs to clarify his prior testimony. Agent Dobbs stated that he recalled someone mentioning that the Defendant got an air compressor from the pawn shop. He did not know if this was related to the firearms transactions or a separate transaction. He stated that the purchase receipts do not mention an air compressor.

### III. FINDINGS OF FACT

Based upon the testimony of Agent Dobbs and the exhibits presented at the April 8 hearing,

5

Case 3:13-cr-00110-HSM-HBG Document 29 Filed 05/19/14 Page 5 of 12 PageID #: 98

the Court makes the following factual findings:

On or around March 16 and 18, 2013, Roane County Sheriff's Detective Bryan Walker received an email from U.S.Money Shops pawn shop with lists of transactions occurring at the pawn shop on March 16 and 18, 2013, attached. The list from March 16 reflects that Timothy W. Sanders sold a firearm to the pawn shop for $70. The March 18 list reflects that Timothy W. Sanders sold a firearm to the pawn shop for $250. Detective Walker recognized Timothy Sanders as being a convicted felon. After confirming Sander's status as a felon, Detective Walker contacted Special ATF Agent Jason Dobbs and told him about the transactions.

On May 21, 2013, Agent Dobbs went to U.S.Money Shops pawn shop and seized the guns that Sanders sold to the pawn shop. Dobbs interviewed the two pawn shop clerks who conducted the transactions with Sanders. The clerks identified Sanders as the individual who sold them each a gun and provided the purchase receipts for the sales. Each purchase receipt states in bold font: "**THIS IS A BILL OF SALE.**" The purchase receipts state that Timothy Sanders sold the guns for $70 and $250. Agent Dobbs also reviewed video footage from the pawn shop's surveillance camera for the dates in question. One of the clerks identified Sanders on the video, which showed an individual selling guns.

## IV. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property, except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const.

6

amend. IV. "The 'chief evil' against which the Fourth Amendment protects is the physical invasion of the home, and the Fourth Amendment requires that searches of the home be reasonable." United States v. Huffman, 461 F.3d 777, 782 (6th Cir. 2006) (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). A warrantless search is "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). In the instant case, the Defendant asks the Court to suppress firearms and other evidence seized from a pawn shop on May 21, 2013, because law enforcement seized this evidence without a warrant and by deceiving the pawn shop manager and employees. The Court will first examine whether the Defendant had a legitimate privacy interest in the firearms at the time of their seizure. Next, the Court will briefly analyze the propriety of the warrantless seizure of the firearms.

**A. Standing**

In order to contest whether a search or seizure comports with the Fourth Amendment, the defendant must have "a reasonable expectation of privacy" in the location searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." United States v. Talley, 275 F.3d 560, 563 (6th Cir. 2001). Whether the defendant enjoys a reasonable expectation of privacy does not turn solely upon the defendant's subjective belief but also depends upon (1) the defendant's interest in and control of the place searched, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable. United States v. Padin, 787 F.2d 1071, 1075-76 (6th Cir.), cert. denied, 479 U.S. 823 (1986).

In his brief, the Defendant argues that he retained an interest in the firearms pawned to U.S.Money Shops due to the nature of pawn shops.[1] The Government responds that the Defendant sold the guns to the pawn shop, thereby giving up any interest that he had in the firearms. Also, the Government contends that the Defendant had no legitimate expectation of privacy in the pawn shop, which is a business open to the public.

The Court finds that the testimony presented at the April 8 hearing supports the Government's argument. The Court finds that Defendant sold the firearms to the pawn shop prior to law enforcement's seizure of the firearms. The purchase receipts for the firearms expressly state that they are bills of sale and that the "undersigned" is selling them "outright[,] convey[s] full title[, and is] . . . selling them free of any indebtedness or claim of any kind." Agent Dobbs testimony established that the Defendant was the person who sold the firearms at the pawn shop on March 16 and 18, 2013. Although the transaction lists emailed to Detective Walker give the purchase price under the word "LOANED" for every transaction, each list contains two headings: "PURCHASED ITEMS" and "PAWNED ITEMS." The Defendant's name and firearms transaction appears under the "PURCHASED ITEMS" heading on both lists. Moreover, the "type" of transaction is listed as "Buy" for both firearms, instead of "Pawn," which is the type of transaction given under the

---

[1] In his legal memorandum in support of his motion, the Defendant argues that he has "automatic standing" to challenge the seizure of the firearms because he is charged with an offense which has "possession" as an essential element. At the April 8 hearing, the Government pointed out that the automatic standing doctrine was overturned by the Supreme Court in United States v. Salvucci, 448 U.S. 83, 95 (1980). Instead, persons seeking to challenge police seizure of an item under the Fourth Amendment must show that they have a legitimate expectation of privacy in the area from which the item was seized. Id. at 91-92. But see, United States v. Jones, 132 S. Ct. 945, 951 (2012) (concluding that affixing a GPS tracking device to a vehicle and monitoring the vehicle's movements on public roadways is a search under the Fourth Amendment because police committed a warrantless trespass upon the vehicle). Counsel for Defendant then withdrew his argument based upon automatic standing.

8

"PAWNED ITEMS" heading. The Court finds that the firearms in question were sold to the pawn shop and that the Defendant had no property interest in the firearms at the time they were seized.

Additionally, and more importantly, the Defendant had no legitimate expectation of privacy in the pawn shop from which Agent Dobbs obtained the firearms. "An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger, 482 U.S. 691, 700 (1987); Savoy v. United States, 604 F.3d 929, 938 (6th Cir. 2010). Moreover, "there is no reasonable expectation of privacy 'in areas of [a business] where the public was invited to enter and to transact business.'" Savoy, 604 F.3d at 937 (quoting Maryland v. Macon, 472 U.S. 463, 469 (1985)). Thus, the Court finds that the Defendant had no reasonable expectation of privacy in the pawn shop when he conducted transactions there on March 16 and 18, 2013, much less on March 21, 2013, when the firearms were seized. The Court finds that the Defendant does not have standing to challenge the seizure of the firearms, surveillance video footage, and statements of the pawn shop employees. The Court recommends that the Defendant's Motion to Suppress Evidence [Doc. 22] be denied for this reason alone.

### B. Propriety of Seizure

Although the Court finds that the Defendant lacks standing to challenge the seizure of the firearms, the Court will briefly address the Defendant's Fourth Amendment argument in the event that the District Judge disagrees with the Court's standing analysis. The Defendant contends that law enforcement acted in bad faith by falsely representing that the firearms were stolen in order to require the pawn shop to retain the firearms. He states that on March 19, 2013, law enforcement

9

issued a Pawn Shop/Law Enforcement Hold Order to U.S.Money Shops, directing it to retain the firearms allegedly sold by the Defendant. He contends that this hold order suggests that the firearms were stolen because it provides a false case number purporting to originate from a stolen property report. The Defendant likens the acquisition of the firearms by this deception to the police receiving involuntary or unknowing consent to search by the owner of a premises. The Government responds that the hold order placed on the firearms did not contain false information and that Agent Dobbs would have seized the firearms even in the absence of the hold order because the pawn shop was required by law to retain the firearms for twenty days after purchasing them.

First, the Court observes that the hold order at issue in this case was not placed into evidence at the evidentiary hearing, nor was it referenced in Agent Dobbs' testimony.[2] Nevertheless, the Court finds that even if the hold order contained false information, the firearms would have inevitably been seized by Agent Dobbs independent of the hold order.

The inevitable discovery doctrine excepts from exclusion those items that were unlawfully obtained if they would have been inevitably discovered. See Nix v. Williams, 467 U.S. 431, 444-46 (1984). In such cases, "the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." Id. at 444. The inevitable discovery doctrine applies only "when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." United States v. Kennedy, 61 F.3d 494, 499 (6th Cir. 1995). The government must make this demonstration by a preponderance of the

---

[2]The Court notes that the Government made the hold order, which was issued by Detective Walker on March 19, 2013, an exhibit [Doc. 26-2] to its response to the suppression motion.

10

evidence, and the following guidelines apply:

> For the inevitable discovery exception to apply, it must be demonstrated that the evidence inevitably would have been acquired through lawful means had the government misconduct not occurred. [Nix,] at 444, . . ., see Murray v. United States, 487 U.S. 533, 539 . . . (1988). Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." Nix, 467 U.S. at 444 n.5 . . . . "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." United States v. Eng, 971 F.2d 854, 861 (2d Cir. 1992), cert. denied, 510 U.S. 1045 . . . (1994).

Kennedy, 61 F.3d at 497-98, see, e.g., United States v. Taylor, 248 F.3d 506, 514 (6th Cir. 2001).

In the instant case, Agent Dobbs testified that Detective Walker alerted him that the Defendant, a convicted felon, had sold firearms to U.S.Money Shops on March 16 and 18, 2013. He stated that on March 21, 2013, he went to U.S.Money Shops, interviewed the manager and two clerks, and seized video footage and the firearms in question.

Federal regulations permit an ATF agent to enter the premises of licensed firearms dealer[3] and inspect records and firearms without a search warrant "in the course of a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee[.]" 27 C.F.R §478.23(b). Accordingly, Agent Dobbs had authority to inspect the firearms at issue and the purchase receipts in the course of his investigation of the Defendant for being a felon in possession of a firearm. Furthermore, Tennessee Code Annotated § 45-6-204(a)(7) provides that "[a] pawnbroker licensed pursuant to this part has the power to: . . . [m]ake over-the-counter purchases of goods that the seller does not intend to buy back. The pawnbroker shall hold the goods for a period of not less than twenty (20) business days before offering the merchandise for resale[.]"

---

[3]A pawnbroker is a firearms dealer. 27 C.F.R. §478.11.

Because Agent Dobbs went to U.S.Money Shops within five days of the first transaction, the firearms would have still been at the pawn shop without regard to the issuance of a hold order. Thus, the Court finds by a preponderance of the evidence that the firearms would have been inevitably discovered by Agent Dobbs without regard to whether law enforcement issued a hold order for the pawn shop to retain the firearms. Because the firearms would have been inevitably discovered, the Court finds no need to analyze the veracity or effect of the hold order.

## V. CONCLUSION

After carefully considering the motion, memoranda, oral arguments, testimony, exhibits, and relevant legal authorities, the Court finds that the Defendant lacks standing to challenge the seizure of the firearms. The Court also finds no basis to suppress the firearms seized from the pawn shop or any evidence derived from their seizure. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Suppress Evidence [**Doc. 22**] be **DENIED**.[4]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).